# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK
# BUFFALO DIVISION

| | | |
|---|---|---|
| Carlanda D. Meadors, an Individual, et. al., | ) ) ) | Case No. 21 CV 982 JLS |
| Plaintiffs, | ) ) | **MEMORANDUM OF LAW** |
| | ) | **IN OPPOSITION TO** |
| Vs. | ) ) | **TEMPORARY** |
| | ) | **RESTRAINING ORDER** |
| Erie County Board of Elections, | ) ) | |
| | ) | |
| Defendant. | ) | |

s/Sean E. Cooney, Esq.
Sean E. Cooney, Esq
Dolce Firm
Attorney for Defendant-Intervenor India B.
Walton
1260 Delaware Avenue
Buffalo, New York
(716) 852-1888
scooney@dolcefirm.com

# TABLE OF CONTENTS

Page

Table of Authorities ………………………………………………..…….. ii

Preliminary Statement ………………………………………………....1

Discussion ……………………………………………………………....4

I.  The Plaintiffs Cannot Show a "Clear" or "Substantial" Likelihood
    Of Success on the Merits ……………………………………….............4

    A.  The Standard of Review ……………………………………...5

    B.  Election Law 6-§158(9) as applied here is a Constitutionally justified
        "Sore Loser" statutory design…………………………………11

    C.  The State's Interest in providing the deadline meet either standard of
        Review……………………………………………………………16

II.  Plaintiff Will Not Suffer Irreparable Harm …………………………20

III.  The Harm to the Defendant and to Defendant-Intervenor ………………..22

IV.  The Public Interests Will be Best Served With Equal Enforcement of
    Election Law …………………………………………………23

Conclusion …………………………………………………………..…25

Anderson v. Celebrezze, 460 U.S. 780 (1983)......................5, 6-9, 12, 14-16

Bradley v. Mandel, 449 F. Supp. 983, 985 (D. Md. 1978) ...........................7

Brown v. ], Erie County Index Number 811973/2021...............................20

Council of Alternative Pol. Parties v. Hooks, 179 F.3d 64
    (3d Cir. 1999) ..................................................................5, 8-11, 14, 19

Cripps v. Seneca Cnty. Bd. of Elections, 629 F. Supp.1335 (N.D. Ohio 1985)....7

Cromer v. South Carolina, 917 F.2d 819, 822 (4th Cir. 1990) .......................7

Dekom v. Nassau Cty., 595 F. App'x 12, 14 (2d Cir. 2014) ........................21

Graveline v. Benson, 992 F.3d 524 (6th Cir. 2021).............................7, 9

Kennedy v. Cascos, 214 F. Supp. 3d 559 (W.D. Tex. 2016)........................15

Lawrence v. Blackwell, 430 F.3d 368, 370, 375 (6th Cir.2005) .....................8

Libertarian Party of Michigan v. Johnson, 905 F. Supp. 2d 751
    (E.D. Mich. 2012), aff'd, 714 F.3d 929 (6th Cir. 2013).......................12

McLain v. Meier, 637 F.2d 1159, 1164 (8th Cir. 1980) ..............................7

Murray v. Cuomo, 460 F. Supp. 3d 430 (S.D.N.Y. 2020) ...................4, 21, 23

Nader v. Brewer, 531 F.3d 1028, 1035 (9th Cir. 2008)...............................6

Nat'l Comm. of U.S. Taxpayers Party v. Garza, 924 F. Supp. 71
    (W.D. Tex. 1996).............................................................12, 16

# TABLE OF AUTHORITIES
## CASES

Page

New Alliance Party of Ala. v. Hand, 933 F.2d 1568, 1570 n.3 (11th Cir. 1991)...7

Party of Michigan v. Johnson, 905 F. Supp. 2d 751 (E.D. Mich. 2012),
    aff'd, 714 F.3d 929 (6th Cir. 2013)........................................5, 6, 12

Pisano v. Strach, 743 F.3d 927, 935 (4th Cir. 2014)..................................8

Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996) ........................20, 21

Stoddard v. Quinn, 593 F. Supp. 300 (D. Maine 1984) ..............................7

Storer v. Brown, 415 U.S. 724 (1974) ..................................................12

Swanson v. Worley, 490 F.3d 894, 905–06, 910 (11th Cir.2007) ...................7

Trudell v. State, 2013 VT 18, ¶¶ 22-25, (2013).....................................16, 18

Whittaker v. Mallott, 259 F. Supp. 3d 1024, 1036 (D. Alaska 2017) ...............7

Wood v. Meadows, 207 F.3d 708, 713 (4th Cir. 2000) ...............................8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK
## BUFFALO DIVISION

| | |
|---|---|
| Carlanda D. Meadors, an Individual, et. al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| Vs. | ) ) ) |
| Erie County Board of Elections, | ) ) ) |
| Defendant. | ) ) |

Case No.  21 CV 982 JLS

**MEMORANDUM OF LAW IN OPPOSITION TO TEMPORARY RESTRAINING ORDER**

## PRELIMINARY STATEMENT

As set forth in the accompanying motion to intervene Defendant-Intervenor India Walton is seeking permission to intervene in this action as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure or, in the alternative, permissive intervention in this matter under Rule 4(b)(2) of the Federal Rules of Civil Procedure. Further, Defendant-Intervenor India B. Walton has filed a motion for expedited hearing as it relates to her motion to intervene consistent with the

Order granting expedited hearing relating to Plaintiffs' motion for a temporary restraining order

The Defendant-Intervenor, India B. Walton, respectfully submits this Proposed memorandum of law in opposition to Plaintiffs' Motion for a Temporary Retraining Order.

This action was commenced on August 30, 2021, by CARLANDA D. MEADORS, LEONARD A. MATARESE, AND JODO D. AKOMO, (hereinafter "Plaintiffs") residing in the City of Buffalo, making a Constitutional challenge to New York State Election Law Section 6-158.9 which sets the filing date for independent candidates at least twenty-three (23) weeks before the November 2, 2021 election.

Plaintiffs are seeking an order prohibiting defendant Erie County Board of Elections from enforcing the petition deadline and requiring them to place the name of Byron W. Brown on the 2021 general election ballot as an independent candidate for the Mayor of the City of Buffalo.

The plaintiffs' motion for a temporary retraining order should be denied.

### Background

Buffalo's Mayor, Byron W. Brown, is running for re-election seeking a 5th term, as Mayor.

In 2021, Mr. Brown again sought re-election in 2021 as the nominee of the Democratic Party. Mr. Brown was the endorsed candidate by the Erie County Democratic Committee in 2021 Buffalo Mayoral Democratic Primary and was designated as candidate in the primary by filing of Democratic Designating Petitions with the Erie County Board of Elections. Mr. Brown appeared on the ballot in the June 22, 2021 primary along with other Democratic Party candidates, including Defendant-Intervenor India B. Walton and other Democratic party members. Mr. Brown was defeated in the Democratic Primary and India B. Walton was declared the winner. These facts are well known and within the Affidavit of India B. Walton filed in support of her motion to intervene.

Shortly after the Democratic Party primary was over, Mr. Brown announced to the media and others that he was launching a write-in campaign for the November 2, 2021 general election.

Mr. Brown's then supporters launched an effort to nominate him as a purported "independent candidate."

While the subject deadline under New York Election Law §6-158(9) was moved in 2019 from August to May, it was and remains after the time to file party designating petitions and before the primary date which was moved to June in 2019. Had the election calendar not been changed in 2019, Mr. Brown's

supporters would have simply waited until after he lost the September primary and the former August deadline would have been passed just like this year's May deadline.   In other words, the deadline at issue is not the reason Mr. Brown's supporters failed to timely circulate and file the Independent Nominating Petition.

### Legal Standard For Temporary Restraining Order

The four factors a Plaintiff seeking a temporary restraining order must demonstrate are (1) there is a substantial likelihood of success on the merits; (2) it will suffer irreparable injury if relief if the relief is not granted; (3) the threatened injury outweighs any harm the requested relief would inflict on the non moving party; and (4) enter of relief would serve the public interest.  Winter v. Nat. Res. Def. Council, Inc, 555 U.S. 7 (2008).

Courts have acknowledged how rare a temporary restraining order is specifically relating to a New York State Election.  "[T]he temporary restraining order the Plaintiff seeks here, is an "extraordinary and drastic remedy" that is "unavailable except in extraordinary circumstances."  Murray v. Cuomo, 460 F. Supp. 3d 430, 442 (S.D.N.Y. 2020)

### Discussion

**I.    The Plaintiff's Cannot Show A "Clear" or "Substantial" likelihood of success on the merits**

Just last year the Southern District the Court denied a Temporary restraining order seeking to place the name of a candidate on a ballot after petitions were invalided by the Board of Elections.

The Court noted "since Plaintiff here seeks a mandatory injunction against the government that would change the status quo existing when the case was filed (*i.e.* by adding her name to the ballot), she is subject to a heightened standard. Namely, she must show "a 'clear' or 'substantial' likelihood of success on the merits." Murray v. Cuomo, 460 F. Supp. 3d 430, 442 (S.D.N.Y. 2020).

As discussed below, Plaintiffs' specific request to extend the deadline for nominating petitions to over 50 days passed a party primary has been specifically rejected as the Constitution *does not guarantee preferential treatment.* Council of Alternative Pol. Parties v. Hooks, 179 F.3d 64, 67 (3d Cir. 1999).

Thus, Plaintiffs cannot meet the heightened standard on the request for injunctive relief to show a "clear" or "substantial" likelihood of success on the merits.

## A. The Standard of Review

The Plaintiffs' challenge to the New York State deadline for the filing of Independent Nominating Petitions based on violations of First and Fourteenth Amendments requires the Court to apply a balancing test of the asserted injury and

the state's interest justifying the burden as set out by the Supreme Court in Anderson v. Celebrezze, 460 U.S. 780, 789, (1983). Through conducting the balancing test the Court can apply the necessary standard of review in each case.

At one end of review are regulations that are discriminatory or place severe burdens on plaintiffs' rights which must be narrowly tailored and advance a compelling state interest. Id. See also Party of Michigan v. Johnson, 905 F. Supp. 2d 751, 758–59 (E.D. Mich. 2012), aff'd, 714 F.3d 929 (6th Cir. 2013). Applying the Anderson balancing test, the Ninth Circuit held "the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, "reasonably diligent" candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so." Nader v. Brewer, 531 F.3d 1028, 1035 (9th Cir. 2008).

There is no allegation that the candidate Byron W. Brown was unable to get on the ballot by the May deadline with some reasonable diligence. Instead, it is admitted that the supporters did not attempt until after he lost the primary election. Further, there is no allegation made by plaintiffs that independent candidates are unable to obtain ballot access under the May deadline. In fact, other candidates did successfully obtain access to the ballot by way of Independent Nominating Petitions timely filed on or before May 25, 2021.

Where there is no discriminatory or severe burden, "[l]esser burdens, however, trigger less exacting review, and a State's " 'important regulatory interests' " will usually be enough to justify " 'reasonable, nondiscriminatory restrictions." Party of Michigan v. Johnson, 905 F. Supp. 2d 751, 758–59 (E.D. Mich. 2012), aff'd, 714 F.3d 929 (6th Cir. 2013).

Here, the New York State May deadline for filing of Independent Nominating Petitions is neither discriminatory, nor severe, thus the standard of review is the less exacting review where a State's important regulatory interests are enough to justify the reasonable, non discriminatory deadline.

The Sixth Circuit recently noted the deadlines where the Courts applied strict scrutiny and struck deadlines required independent candidates (or minor parties) to file qualifying petitions "substantially in advance" of a primary election or nominating convention. Graveline v. Benson, 992 F.3d 524, 536–37 (6th Cir. 2021). The Graveline Court noted the following examples, Anderson, 460 U.S. at 783 n.1, 103 S.Ct. 1564 (deadline **seventy-five days before primary**); New Alliance Party of Ala. v. Hand, 933 F.2d 1568, 1570 n.3 (11th Cir. 1991) (deadline **sixty days before primary**); Cromer v. South Carolina, 917 F.2d 819, 822 (4th Cir. 1990) (deadline **seventy days before primary**); McLain v. Meier, 637 F.2d 1159, 1164 (8th Cir. 1980) (deadline **ninety days before primary**); Cripps v. Seneca Cnty. Bd. of Elections, 629 F. Supp. 1335, 1338 (N.D. Ohio 1985)

(deadline **seventy-five days** before primary); <u>Stoddard v. Quinn</u>, 593 F. Supp. 300, 306 (D. Maine 1984) (68 day deadline); <u>Bradley v. Mandel</u>, 449 F. Supp. 983, 985 (D. Md. 1978) (deadline **seventy days before primary**).

On the other hand, "Courts around the country have similarly noted that a filing deadline that falls on or around the date of the primary election is not burdensome under *Anderson.* " <u>Whittaker v. Mallott</u>, 259 F. Supp. 3d 1024, 1036 (D. Alaska 2017), upholding deadline on the date of the primary election. <u>Swanson v. Worley</u>, 490 F.3d 894, 905–06, 910 (11th Cir.2007) (upholding Alabama's **primary-day filing deadline**); <u>Lawrence v. Blackwell</u>, 430 F.3d 368, 370, 375 (6th Cir.2005) (upholding Ohio's ***primary-eve filing* deadline** for unaffiliated congressional candidates); <u>Wood v. Meadows</u>, 207 F.3d 708, 713 (4th Cir. 2000) (upholding **Virginia's primary-day filing deadline** for unaffiliated candidates in local and statewide elections). See also, <u>Pisano v. Strach</u>, 743 F.3d 927, 935 (4th Cir. 2014), upholding a North Carolina deadline just after a Presidential primary and before the major party Presidential Conventions.

Here the New York deadline is May 25, 2021 is 28 days prior to the major party primary election of June 22, 2021. Plaintiffs cite no authority that a 28 day deadline is a severe burden or that the <u>Anderson</u> test renders it unreasonable. This burden is not severe as independent candidates do reach the ballot and the May 25, 2021 independent nominating petition deadline is not sever since it is actually later

than the major party designating petition deadline of March 25, 2021. See Election Law §6-158(1). The Third Circuit noted that this later deadline actually favored the independent candidates and held that the State's interests in a fair electoral process, voter education, and political stability are sufficient to outweigh the small burden imposed upon the plaintiffs' rights under the First and Fourteenth Amendments. Hooks, 179 F.3d 64, 80 (3d Cir. 1999).

None of the Plaintiffs authority suggests the Constitution requires what Plaintiffs' actually seek here, that is preferential treatment for Independent candidates with an August 17, 2021 deadline for independent candidacies that is 56 days after the major party primary is over on June 22, 2021. As mentioned above, the Courts applying Anderson test struck similar deadlines of fifty days or more due to its unequal treatment. Yet here, Plaintiffs' wish this Court to require by temporary restraining order a 54 day discriminatory deadline to their advantage despite the clear legal authority prohibiting such unequal burdens on ballot access. See Graveline v. Benson, 992 F.3d 524, 536–37 (6th Cir. 2021), which struck a 50 day earlier deadline. "Nor do we see any support in any other Supreme Court decision for the plaintiffs' claim of right to preferential treatment. Rather, the Supreme Court's election jurisprudence suggests that no candidates should be given any relative advantage over the other." Council of Alternative Pol. Parties v. Hooks, 179 F.3d 64, 75 (3d Cir. 1999)

The preferential treatment over major party candidates that plaintiffs claim here is required by the Constitution was precisely rejected by the Third Circuit in the 1999 decision, Council of Alternative Pol. Parties v. Hooks, 179 F.3d 64, 74 (3d Cir. 1999). Notably, Plaintiffs' cite to Council of Alternative Pol. Parties v. Hooks, 121 F.3d 876 (3d Cir. 1997), an earlier decision in the same case noting New Jeresey's 54 day pre primary deadline was a severe burden. Yet, they do not cite to the 1999 decision which upheld New Jersey's amended after the 1997 decision to a primary day deadline. After the 1997 decision, with an interim consent order, the parties agreed to extend the 1998 filing deadline from April 9 to July 27, 1998 which is after the June party primaries. Hooks, 179 F.3d 64, 67 (3d Cir. 1999). Then, the New Jersey Legislature amended the deadline, so that nominating petitions are no longer due 54 days before the June primary, as they were under the version of the law examined by the 1997 Hooks decision, and provided a new deadline of the day of the primary. Council of Alternative Pol. Parties v. Hooks, 179 F.3d 64, 67 (3d Cir. 1999). Thus during the 1998 interim consent order the deadline was after the June party primaries.

The 1999 Hooks decision rejected the precise relief sought here, where Plaintiffs challenged amened New Jersey's primary day deadline with an attempt to extend the deadline until after party deadlines and after the primary itself. The 1999 Hooks court held:

Plaintiffs fail to recognize that, unlike in *Anderson,* they are able to respond to the events taking place in the political landscape during the 54–day interval between the political party and the alternative political party deadlines. Therefore, what the plaintiffs wish to enjoy on a permanent basis—and what they obtained in 1998 under the interim consent order—is a petition deadline that is substantially later than the date of the primary, when the major party candidates are nominated. (In 1998, their deadline was July 27.) Accordingly, what they are seeking cannot be termed equal treatment. On the contrary, they are asserting a constitutional right to *preferential treatment.*

Council of Alternative Pol. Parties v. Hooks, 179 F.3d 64, 74 (3d Cir.

1999)(emphasis added.)

The Plaintiffs argued that New Jersey's filing deadline burdens them by "prevent [ing] alternative political parties and their supporters from responding to disaffection with the candidates chosen by the recognized political parties at their June primaries." Council of Alternative Pol. Parties v. Hooks, 179 F.3d 64, 74 (3d Cir. 1999). The Court rejected this claim outright. "To order the relief that plaintiffs request would tip the scales in their favor and provide them with a relative advantage over their political party counterparts. We therefore reject the plaintiffs' claim that they are constitutionally entitled to file their nominating petitions after the major party candidates are chosen so that they can recruit and nominate candidates who can capitalize on disaffection with the major political parties' nominees. Id at 75.

**B. Election Law 6-§158(9) as applied here is a Constitutionally justified "Sore Loser" statutory design**

A "sore loser" candidacy is one in which an individual loses in a party primary and then seeks to run in the same election as an independent or minor party candidate. Council of Alternative Pol. Parties v. Hooks, 179 F.3d 64, 80 (3d Cir. 1999).

The US Supreme Court has recognized the validity of a State's interest to limit names on the general election ballot in order prevent party primary losers from continuing the struggle into the general.

> The general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds. The provision against defeated primary candidates running as independents effectuates this aim, the visible result being to prevent the losers from continuing the struggle and to limit the names on the ballot to those who have won the primaries and those independents who have properly qualified

Storer v. Brown, 415 U.S. 724, 735, (1974).

Indeed, a "State may impose restrictions which settle intraparty competition before the general election." Nat'l Comm. of U.S. Taxpayers Party v. Garza, 924 F. Supp. 71, 74 (W.D. Tex. 1996). "The Supreme Court recognized, in *Clingman,* that preventing sore-loser candidacies serves an important state interest in preventing "party splintering and excessive factionalism," as well as "the organized switching of blocs of voters from one party to another." Libertarian Party of Michigan v. Johnson, 905 F. Supp. 2d 751, 760 (E.D. Mich. 2012), aff'd, 714 F.3d 929 (6th Cir. 2013).

Even the main authority relied upon by Plaintiffs acknowledges the validity of a "sore loser" statute. <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 804, (1983).

New York Election Law §6-158(9) provides for the deadline for the filing on Independent Nominating Petitions. Of course, in 2019 the deadline was moved from August (11 weeks before the general election) to May (23 weeks before the general election.) Importantly, this change coincided with moving the primary election date from September to June. Thus, the deadline imposed by Election Law §6-158(9) has been prior to Primary day in New York State.

Plaintiffs' admit they are "three individual supporters of current Mayor Byron W. Brown" and that "Brown initially sought re-election in 2021 as the nominee of the Democratic Party but was defeated in the primary election." Plaintiff's Memorandum of Law, Document 3 at page 3. Further, Plaintiffs admit that "Brown's supporters **then** launched an effort to nominate him as an independent candidate." Id.

Heavy reliance on the rationale behind <u>Anderson</u> is misplaced since there the Supreme court "found two factors to be significant" which do not apply here. See <u>Council of Alternative Pol. Parties v. Hooks</u>, 179 F.3d 64, 72 (3d Cir. 1999), where the <u>Anderson</u> decision was discussed. "First, the Court stressed that the Ohio statute regulated *presidential* elections and not *state or local* elections." Id.

Second, the Court noted that the early filing deadline did not apply "equally" to all candidates and placed independent candidates at a relative disadvantage." Id.

The Court in Anderson repeatedly noted the importance that underlying candidate was independent who was not one of the major parties had ballot access. The Court noted concern for the "impact on independent-minded voters." Anderson, 460 U.S. at 790. The Court also expressed concern of restricting "persons who wish to be independent candidates from entering the significant political arena." Id Additionally, the Court relied up possible disadvantage "for independents," or a "a newly-emergent independent candidate," Id at 791, or "candidate outside the major parties." Id at 792. Further, the Court sought to prevent "[a] burden that falls unequally on new or small political parties or on independent candidates." Id at 793.

Ultimately, the Court held that the Ohio deadline "discriminates against those candidates and—of particular importance—against those voters whose political preferences lie *outside the existing political parties*. Anderson v. Celebrezze, 460 U.S. 780, 794, (1983).

This principle of the Anderson decision was that the earlier deadline had a discriminatory impact on independent minded voters and independent candidates. "In *Anderson*, the Court struck down an Ohio statute that imposed a March

deadline for filing an application to run as an independent candidate for

President. (citation omitted) The Court found that the early deadline imposed a

substantial and discriminatory burden on the rights of independent-minded voters

and independent candidates. <u>Kennedy v. Cascos</u>, 214 F. Supp. 3d 559, 563 (W.D.

Tex. 2016)

A comparison of this Brown candidacy to that of the others is telling. "The

Court finds that the Defendants' stated reasons for the "sore loser" statute are valid,

legitimate justifications for the restriction. There is no question that the present

situation presents an example of intraparty feuding. Pat Buchanan is now, and at all

relevant times has been, a Republican. It is well known that he would like to be in

the place of the likely Republican nominee for President, Bob Dole, and that he has

sought, in a spirited contest, the Republican Party's Presidential nomination in

1996. The "sore loser" statute is designed to address this very type of intra-party

conflict." <u>Nat'l Comm. of U.S. Taxpayers Party v. Garza</u>, 924 F. Supp. 71, 74–75

(W.D. Tex. 1996).

Hardly an independent candidate, perhaps unsure of the political landscape

at the current May deadline, the candidate here is an enrolled member of the

Democratic Party, was the endorsed Democratic candidate in the primary, was a

four term incumbent Mayor, and former chair of the statewide Democratic Party,

seeking a record 5th term as Buffalo Mayor.

## C. The State's Interest in providing the deadline meet either standard of Review

As discussed above, New York State Election Law §6-158(9) provides for a minimal burden on the independent nominating process and is subject to the less strict review as it is not discriminatory or severe. Accordingly, the State's "important regulatory interests' " will usually be enough to justify.

Nonetheless, the deadline here also meets the higher standard of review.

Federal Courts have recognized a "State's interest in avoiding political fragmentation in the context of elections wholly within the boundaries of [the state]." . Anderson v. Celebrezze, 460 U.S. 780, 804, (1983).

A similar Vermont deadline was upheld based in Trudell v. State, 2013 VT 18, ¶¶ 22-25, (2013). Like New York, the Vermont deadline for independent candidacies was before the major party primary winner was known but candidates could simultaneously qualify as an independent or major party nominee. Id.

There the Vermont Supreme Court noted "the State has a legitimate interest in complying with the federal MOVE Act." Id.

When New York Amended its election calendar in 2019 it provided as justification its desire to comply with the federal Military Overseas Voter Empowerment (MOVE) Act and provide ballots to military members and their families for federal, state and local elections. The committee report on the 2019

amendments to the Election Law provided "The MOVE Act was designed to provide greater protections of the voting rights of military personnel, their families, and other overseas citizens." 2019 New York Assembly Bill No. 779, New York Two Hundred Forty-Second Legislative Session. The report continued, "the overall structure of the deadlines and due dates in New York State election law mean that that changing the time-frame in which military and overseas ballots must be mailed necessitates various changes to numerous interdependent sections of the election law, culminating in moving the primary date."

In sum, the report noted "The benefits of merging the federal non-presidential and state primaries are threefold: such a merger will ensure that military personnel and New Yorkers living abroad have an opportunity to vote, it will prevent New Yorkers from having to go out and vote in three separate primaries in 2016, and by reducing the number of primary days, county boards of elections throughout New York State will see a collective cost savings of approximately $25,000,000. New York State's primary was held in June until 1974 when it was changed to its current date of the first Tuesday after the second Monday in September."

In addition to merging the primaries to comply and advance the interests of the MOVE act, New York also had an interest in the political stability of preventing "sore loser" candidacies.

While like New York, Vermont does not have a pure sore loser statute that outright prohibits a candidate from being a party and independent candidate, it has "a legitimate interest in creating a system that precludes so-called sore losers and prevents intra-party feuding." Trudell v. State, 2013 VT 18, ¶¶ 22-25, (2013). The Court explained the similar process in Vermont used to accomplish, "a legitimate interest in creating a system that precludes so-called sore losers and prevents intra-party feuding. Two of the legislators testifying at trial thought it "unfair" to give such candidates "two bites at the apple." Id.

The Court continued by stating the "deadline will generally deter the sore-losers, party candidates are still permitted to register simultaneously for primaries as well as independents. Nonetheless, these individuals registered as both party and independent will be known in advance, and there will no longer be any surprise when the candidate who describes himself or herself as a major party candidate runs as an independent after losing the primary. Based on the supporting case law, the State-claimed desire to prevent sore-loser candidacy finds support."

New York's similar interest in preventing sore loser candidacies justifies the deadline.

Additionally, New York State has a valid interest and obligation not to create an unlawful advantage to independent candidates by leaving the August

deadline in place more than fifty days after the major party primaries and six months after party petitioning begins.

As discussed above, this preferential treatment is the relief plaintiffs seek here in this motion for temporary restraining order. "To order the relief that plaintiffs request would tip the scales in their favor and provide them with a relative advantage over their political party counterparts." Hooks, 179 F.3d 64, 75 (3d Cir. 1999). Just as this relief is unwarranted as it creates disadvantage, the state had a compelling interest not to discriminate against the other candidates by leaving the deadline under Election Law §6-158(9) 11 weeks prior to the general election when it moved the primary to June.

## II.    Plaintiff will not suffer irreparable harm

The Plaintiff contends its irreparable harm is simply that there candidate will not appear on the ballot if the temporary retraining order is not granted. This harm is not irreparable given their candidate commenced a special proceeding in New York State Supreme Court under Article 16 of the New York State Election Law, titled Brown v. Erie County Board of Elections, Erie County Index Number 811973/2021 which is returnable at 11:00 am on September 2, 2021. The legal basis relied upon in Mr. Brown's validation proceeding in State Court is the same constitutional challenge to Election Law §6-158(9).

Article 16 of the Election Law provides the statutory framework to for candidates to obtain judicial relief related to the Defendant Erie County Board of Elections determination invalidating the nominating petition.

In fact, defendant-intervenor requests that this Court exercise its right to decline jurisdiction under the doctrine of abstention and remand this local election dispute with a related state action be remanded after denial of the motion for temporary restraining order. Federal courts have the power to refrain from hearing cases that would interfere with certain types of state civil proceedings. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, (1996).

The Supreme Court has noted "federal courts may decline to exercise their jurisdiction, in otherwise " 'exceptional circumstances,' " where denying a federal forum would clearly serve an important countervailing interest, *(citation omitted)*, for example, where abstention is warranted by considerations of "proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, (1996).

The Second Circuit has held "New York Election Law § 16–102 provides an adequate post-deprivation remedy for random and unauthorized deprivations of due process in disputes over failure to list a candidate's name on the ballot in a New York election." Dekom v. Nassau Cty., 595 F. App'x 12, 14 (2d Cir. 2014). See also, "A review of New York law suggests that constitutional claims may be asserted in New York State Article 16 proceedings. The statute setting forth the jurisdiction of Article 16 judicial proceedings grants broad jurisdiction to the New York Supreme Court." Murray v. Cuomo, 460 F. Supp. 3d 430, 440–41 (S.D.N.Y. 2020).

The State Court special proceeding will allow the constitutionality of the deadline to be resolved on the merits one way or the other without the need for drastic temporary injunctive relief enjoining the defendant from following the law while the dispute is in litigation in State Court.

Importantly, the defendant-intervenor is a party in the State Court proceeding and has asserted issues related to whether the subject nominating petition otherwise complies the State Law. Specifically that the petition fails to conform to Election Law §6-140 that sets forth the requirements for the form of the petition.

### III.  The harm to the Defendant and to Defendant-Intervenor

The third <u>Winter</u> factor is whether the threatened injury outweighs any harm the requested relief would inflict on the non moving party. As discussed above, the Plaintiffs harm is not irreparable due to the special proceeding in state court.

Additionally, Byron W. Brown and his supporters have launched a well covered write in campaign so that Plaintiffs and others will be able to support and vote for Mr. Brown on November 2, 2021.

If the temporary relief sought by Plaintiffs is entered and the defendant is enjoined from enforcing the Election Law's deadline despite a lack of finding on the underlying merits, it will be forced to print and mail ballots with Byron W. Brown's name. This will in all reality grant Plainitffs' the ultimate remedy they seek and deprive Defendant-Intervenor of her right to an election conducted fairly under the existing State Election Law.

Granting the temporary relief so broadly as requested may harm the defendant-intervenor if her objections in the State Court to the nominating petitions form are rendered moot.

The defendant Erie County Board of Elections may also be harmed by the temporary relief Plaintiffs seek while they wait for an further proceedings before printing and mailing additional ballots, beginning early voting and providing ballots for Election Day. The temporary relief will cause cost, confusion, and perhaps error in the defendant's task of conducting the general election.

### IV. The public interests will be best served with equal enforcement of Election Law

"The public interest is also served by developing and adhering to an election regulation regime developed by the New York State and the City board of elections." Murray v. Cuomo, 460 F. Supp. 3d 430, 449 (S.D.N.Y. 2020).

Here the Election Law gives rise to the political calendar that both candidates and the public operate under through the campaign.

If the temporary relief is granted it will undermine the public's right to a fair election where the time periods under the Election Law are enforced equally and adhered to. Notably, defendant-intervenor was removed from another line on the ballot due a similar missed timing deadline.

Moreover, if the temporary relief is granted and the name of Byron Brown appears on the ballot, he may continue on to win the general election without the public's right and confidence that the election was fairly won. This will be especially true when ultimately the constitutionality of the deadline is upheld.

## Conclusion

The Defendant-Intervenor respectfully requests that if the motion to intervene is granted, the Court consider this Proposed Memorandum of Law in Opposition to Plaintiffs' motion for a temporary restraining order.

Further, Defendant-Intervenor requests that this Court deny Plaintiffs' request for drastic and rare temporary restraining order.

DATED:    Buffalo, New York
September 2, 2021

<div style="margin-left:40%">

s/Sean E. Cooney, Esq.
Sean E. Cooney, Esq
Dolce Firm
Attorney for Defendant-Intervenor India B. Walton
1260 Delaware Avenue
Buffalo, New York
(716) 852-1888
scooney@dolcefirm.com
</div>

TO:   Bryan L. Sells, Esq.
Attorney for Plaintiffs
The Law Office of Bryan L. Sells, LLC
P.O. Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

Frank C. Callocchia, Esq.
Attorney for Plaintiffs
Callocchia Law Firm, PLLC
16 Bidwell Parkway
Buffalo, New York 14222
(716) 807-2686
frank@callocchialaw.com

Jeremy C. Toth
First Assistant County Attorney
Department of Law
95 Franklin Street
Buffalo, New York 14202
(716) 858-2204
jeremy.toth@erie.gov