IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION

| | |
|---|---|
| **Carlanda D. Meadors,** an individual, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> **Erie County Board of Elections**, et al., <br><br> Defendants. | Case No. 1:21-cv-982-JLS <br><br><br> **Plaintiffs' Response in Opposition to the Defendants' Motion for Summary Judgment** |

The plaintiffs respectfully submit this response in opposition to the defendants' motion for summary judgment. (ECF 66.) The defendants argue that they are entitled to judgment as a matter of law because "there are neither allegations nor evidence in the record from which this Court could conclude that Plaintiffs have been burdened by the May 25 deadline." (ECF 66-1 at 6.) But that is only because the defendants chose not to depose Buffalo Mayor Byron Brown, whom the plaintiffs identified as a witness about those burdens, and because the

defendants overlook or dismiss other evidence in the record. While there aren't *many* disputed facts here, the character and magnitude of the burdens imposed by New York's petition deadline are very much in dispute as a matter of fact. This Court should therefore deny the defendants' motion and set this case for trial.

## Background

This is a constitutional challenge to New York's petition deadline for independent candidates. The law at issue is Section 6-158.9 of the New York Election Law, which requires independent candidates to file a nominating petition at least 23 weeks before a general election.

Before 2019, New York's petition deadline for independent candidates was never more than 77 days before the general election—a date that falls in late August. (Winger decl. ¶¶ 9-13, App. 55-56.) In 2019, however, the Legislature changed the deadline to "not later than twenty-three weeks preceding" a general election. Act of January 24, 2019, ch. 5, § 13, 2019 N.Y. Laws 9, 14 (codified at N.Y. Elec. Law § 6-158.9). That date falls in late May, 161 days before the general election; 28 days before the non-presidential primary election; and 107 days before the deadline by which county boards of election are required to

2

determine the candidates who will appear on the general-election ballot. (Winger decl. ¶ 14, App. 56.)

The plaintiffs are individual supporters of Mayor Brown. (Verified Compl. ¶¶ 7-9, ECF 1 at 2-3.) Brown first sought re-election in 2021 as the nominee of the Democratic Party but was defeated in the primary election. (*Id.* ¶ 21, ECF 1 at 6.) Brown's supporters then launched an effort to nominate him as an independent candidate for mayor in the general election. (*Id.* ¶ 23, ECF 1 at 6.) Brown's supporters gathered signatures of eligible voters in the City of Buffalo and filed their nominating petition containing more than the requisite number of signatures with the Erie County Board of Elections on August 17. (*Id.* ¶ 24, ECF 1 at 6; MacKinnon dep. 26:21-27:1, App. 150-51.) The petition would have entitled Brown to a place on the ballot if it had been filed on or before May 25, and it would have been timely under all of New York's petition deadlines in force before 2019. (Verified Compl. ¶ 25, ECF 1 at 7; MacKinnon dep. 27:2-29:17, App. 151-53.)

The Erie County Board of Elections rejected the nominating petition on Friday, August 27, because the petition hadn't been filed by the deadline set out in Section 6-158.9 of the New York Election Law.

3

(Petition Determination Sheet, Pls.' App. 3.) The plaintiffs then filed this case on the following business day. (ECF 1.)

This Court granted a temporary restraining order requiring the defendants to put Brown's name on the ballot. (ECF 28.) The defendants appealed, and a motions panel of the Second Circuit granted a stay in a short order with no discussion of the merits. (ECF 45.) Brown then ran a write-in campaign and won with over 58 percent of the vote. (Election Results, App. 235-42.)

After the election, the Second Circuit dismissed the appeal as moot, and it remanded the case to this Court for further proceedings. (ECF 53.) The defendants then filed this motion after the close of discovery.

**Legal Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.*

In determining whether to grant or deny summary judgment, the court's role is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Id. at 249*. In doing so, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Discussion

To determine whether New York's petition deadline for independent candidates violates the First and Fourteenth Amendments, this Court must apply the balancing test set out by the Supreme Court in *Anderson v. Celebrezze*:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each

of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Under this test, the level of scrutiny varies on a sliding scale with the extent of the asserted injury. When, at the low end of the scale, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are general sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 788, 788-89 n.9). But when the law places discriminatory or "severe" burdens on the rights of political parties, candidates, or voters, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance." *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). *See, e.g., Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020) (discussing "the *Anderson-Burdick* framework").

The plaintiff bears the burden of proof on the first step in the *Anderson* test, and the defendant bears the burden on the second and third. *Burson v. Freeman*, 504 U.S. 191, 199 (1992); *Moore v. Martin*, 854 F.3d 1026 (8th Cir. 2017); *Nader v. Brewer,* 531 F.3d 1028, 1039-40 (9th

Cir. 2008); *Lopez Torres v. New York State Bd. of Elections,* 462 F.3d 161, 203 (2d Cir. 2006), *rev'd on other grounds* 552 U.S. 196 (2008); *Patriot Party v. Allegheny Cnty. Dept. of Elections*, 95 F.3d 253, 267-68 (3d Cir. 1996). In this analysis, "the burden is on the state to 'put forward' the 'precise interests … [that are] justifications for the burden imposed by its rules,'" and to "explain the relationship between these interests" and the challenged provisions. *Fulani v. Krivanek,* 973 F.2d 1539, 1544 (11th Cir. 1992) (quoting *Anderson*, 460 U.S. at 789). "The State must introduce evidence to justify both the interests the State asserts and the burdens the State imposes on those seeking ballot access." *Bergland v. Harris*, 767 F.2d 1551, 1554 (11th Cir. 1985).

A district court's findings under the *Anderson-Burdick* framework are matters of fact that are subject to review only for clear error. *Lopez Torres*, 462 F.3d at 195; *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418-21 (2d Cir. 2004).

I. **There are genuine issues of material fact about the character and magnitude of the burdens imposed by New York's petition deadline for independent candidates.**

The defendants' argument is simple: "There are neither allegations nor evidence of any burden on Plaintiffs, and so no dispute of material

7

fact." (ECF 66-1 at 16.) In other words, the defendants claim that they are entitled to judgment as a matter of law because the plaintiffs have produced no evidence.

Not so. While this is not a discovery-heavy case or one with many factual disputes, there are genuine issues of material fact about the character and magnitude of the burdens imposed by New York's petition deadline. These facts are essential under the *Anderson-Burdick* framework and are in dispute based on "materials in the record." Fed. R. Civ. P. 56(c)(1)(A). These materials include the verified complaint, an expert declaration by Richard Winger that was timely disclosed, the transcript of Winger's deposition, and a declaration by Mayor Brown, a lay witness who was also timely disclosed. Together, these materials provide more than ample basis for a reasonable jury to find that New York's petition deadline for independent candidates is discriminatory and imposes a severe burden on the plaintiffs' First Amendment rights.

Brown's declaration, for example, provides compelling testimony about the real-world burden that he and his supporters faced because of the petition deadline in 2021. (Brown decl. ¶¶ 12-22, Pls.' App. 6-7.) The plaintiffs timely disclosed Brown as witness about those burdens in their

initial disclosures. (Pls.' Initial Disclosures 2, Pls.' App. 10.) And the defendants chose not to depose him. But that choice doesn't entitle the defendants to summary judgment. Brown's declaration alone creates a genuine issue of material fact about the magnitude of the burdens of the challenged statute.

So does Winger's declaration. He offers his expert opinion that New York's petition deadline is discriminatory in that it weighs more heavily on independent candidates and the voters who support them. (Winger decl. ¶¶ 20-25, App. 58-59.) He also explains at length that those burdens are severe. (Winger decl. ¶¶ 26-54, App. 60-69.) Winger's deposition reinforces those points. (Winger dep. 16:18-19:21, 30:23-31-17, App. 99-102, 113-14.) The defendants' response to Winger's testimony is to suggest that the Court should give it little or no weight because Winger is "an advocate for minor-party ballot access" whose testimony "does nothing to illuminate what burden the law at issue imposed on these Plaintiffs." (ECF 66-1 at 18.) But that is an argument that goes to the weight of Winger's testimony—not its admissibility—and that isn't the Court's role on summary judgment. *See Liberty Lobby*, 477 U.S. at

249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence").

The verified complaint is also "in the record" for purposes of the defendants' motion. Fed. R. Civ. P. 56(c)(1)(a). *See, e.g., Taylor v. City of Rochester*, 458 F. Supp. 3d 133, 140 (W.D.N.Y 2020). The complaint is signed by named plaintiff Carlanda Meadors, whose testimony goes to the heart of the burden here: she wanted to vote for Byron Brown in the general election but couldn't do so because of New York's petition deadline. (Verified Compl. ¶¶ 7-9, ECF 1 at 2-3.) The defendants don't even mention Meadors' testimony.

The defendants contend, though, that the burden here involves "no discrimination against independents" and is "minimal." (ECF 66-1 at 28, 29.) But a reasonable jury could conclude from these materials in the record that the burden is discriminatory and severe, and those facts matter a great deal under the *Anderson-Burdick* framework because they determine the level of scrutiny that this Court must apply. As a result, summary judgment isn't appropriate here, and the Court should set this case for trial.

## II. The defendants haven't shown that New York's petition deadline would satisfy strict scrutiny.

Because there is a genuine dispute about the character and magnitude of the burdens imposed by New York's petition deadline for independent candidates—facts that are necessary to determine the level of scrutiny that the Court should apply under the *Anderson-Burdick* framework—the defendants can only show that they are entitled to summary judgment notwithstanding that dispute if they can show that the challenged statute would satisfy the highest level of scrutiny anyway. But they don't even suggest that the statute is 'narrowly drawn to advance a state interest of compelling importance." *Burdick,* 504 U.S. at 434. They argue only that the state's interests "outweigh" the burdens. (ECF 66-1 at 20.)

The defendants first claim that the statute is justified by a state interest in barring sore-loser candidacies. (ECF 66-1 at 20-22.) Yet they concede both that New York law permits sore-loser candidacies and that the petition deadline doesn't prevent them. (*Id.* at 22.) The petition deadline merely prevents candidacies by so-called sore losers who don't launch their independent candidacies before late May. It prevents sore losers only by happenstance—not by legislative design—and the

11

Supreme Court expressly rejected this justification in *Anderson*. 460 U.S. at 804 n.31. Thus, while a state might have a compelling interest in preventing sore-loser candidacies *if it chose to do so*, New York chooses not to do so. And even if it did, the challenged statute wouldn't be narrowly tailored to serve that interest.

The defendants next argue that the petition deadline is justified by a whole slew of other state interests: (1) ensuring the integrity and reliability of the electoral process; (2) promoting political stability at the expense of factionalism; (3) compliance with the deadlines for mailing ballots to overseas citizens and military personnel; (4) resolving election contests early; (5) cost savings; and (6) making it easier to gather signatures. These justifications and the extent to which the petition deadline advances them are disputed as a matter of fact. (Winger decl. ¶¶ 55-78, App. 69-73; MacKinnon dep. 34:21-70:9, App. 158-94.) Even so, the defendants don't contend that the current petition deadline in late May is narrowly tailored to serve any of these interests. Instead, they argue that the *old deadline* in mid-August was too late. (ECF 66-1 at 25 ("The real question, then, is whether, as applied here, the state's various interest support rejecting the months-overdue petition here.").) But the

old deadline isn't at issue here. Under the *Anderson-Burdick* framework, the defendants have the burden of showing that the restriction at issue—not some other restriction—is "narrowly-drawn to advance a state interest of compelling importance." *Burdick,* 504 U.S. at 434. The defendants' argument that the old deadline was too late to achieve the state's goals is thus beside the point and doesn't show that the current deadline would satisfy strict scrutiny.

Lastly, the defendants argue that this case is distinguishable from *Anderson* for three reasons. (ECF 66-1 at 26-28.) First, they contend that New York's petition deadline only affects state and local elections. (*Id.* at 26-27.) Second, they say that presidential candidate John Anderson wasn't a sore loser while Mayor Brown is. (*Id.* at 27.) And third, they claim that Ohio's law was discriminatory while this one isn't. (*Id.* at 28.) These distinctions are beside the point, however, because—even if taken at face value—they wouldn't show that New York's petition deadline can satisfy strict scrutiny.

The distinctions are also inaccurate. The petition deadline here, just like the one in *Anderson*, applies to all independent candidates, including those for President and other federal offices. *Compare* N.Y.

13

Elec. Law § 6-158.9 *with Anderson*, 460 U.S. at 783 n.1. This isn't a deadline that only applies to state and local candidates as the defendants suggest. But even if it were, the Supreme Court has made clear that ballot access for local races must also comply with the First Amendment. *See, e.g., Norman*, 502 U.S. at 282 (county offices); *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 176-177 (1979) (city offices).

Also, Anderson was a sore loser nine times over. *See Anderson*, 460 U.S. at 784 n.2. He had entered 26 Republican presidential primaries and had already lost nine of them, including the one in his home state, before he decided to run for President as an independent. *See generally,* John B. Anderson, Wikipedia, https://en.wikipedia.org/wiki/John_B._Anderson (last visited January 1, 2023). That Anderson was a sore loser didn't matter to the Supreme Court's analysis of the effect of an early deadline on voters dissatisfied with the nominees of the Democratic and Republican parties, and neither should it matter here.

Lastly, whether New York's petition deadline is discriminatory or not is a question of fact. The plaintiffs' expert has testified that it is. (Winger decl. ¶¶ 20-25, App. 58-59.) The defendants assert (without

14

citation to any materials in the record) that it isn't. That may show that a factual dispute exists, but it doesn't show that the challenged statute satisfies strict scrutiny.

The defendants have thus failed to show that they are entitled to judgment as a matter of law notwithstanding factual disputes about the character and magnitude of the burdens imposed by New York's petition deadline.

## Conclusion

Summary judgment is inappropriate here because there are genuine disputes of material fact. The Court should therefore deny the defendants' motion and set this case for trial.

Respectfully submitted this 4th day of January, 2023.

**/s/ Bryan L. Sells***
Georgia Bar No. 635562
Attorney for the Plaintiffs
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

* *Admitted pro hac vice*

Frank Callocchia
Attorney for the Plaintiffs
Callocchia Law Firm, PLLC
16 Bidwell Parkway
Buffalo, New York 14222
Telephone: (716) 807-2686
Email: frank@callocchialaw.com