UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CARLANDA D. MEADORS, *et al.*,

               Plaintiffs,

   v.

ERIE COUNTY BOARD OF
ELECTIONS, *et al.*,

               Defendants.

_____

1:21-CV-982 MJR

DECISION AND
ORDER

## INTRODUCTION

The parties have consented to have the undersigned enter a final judgment in this case as to defendants' motion for summary judgment. For the following reasons, defendants' motion for summary judgment (Dkt. No. 66) is granted.

## FACTS AND PROCEDURAL BACKGROUND[1]

### *The Complaint*

Plaintiffs Carlanda D. Meadors, Leonard A. Matarese, Jomo D. Akono, Kim P. Nixon-Williams, and Florence E. Baugh are registered voters and residents of the City of Buffalo, New York. Dkt. No. 25, ¶¶ 7-11. Plaintiffs are supporters of Byron Brown, the current Mayor of the City of Buffalo. *Id.*; Dkt. No. 66-2, ¶ 16; 68-2, ¶ 4, ¶ 21. Brown has

---

[1] The information and facts set forth in this section have been taken from the complaint; the parties' statements of facts, memoranda of law and supplementary briefs submitted with respect to the motion for summary judgment; relevant sections of the New York State Election Law; other pleadings as well as prior orders and decisions issued in this case and in a related New York state case; and representations made by the parties during oral argument.

served as Mayor of Buffalo continuously since 2006, and was most recently re-elected to office following a successful independent write-in campaign in 2021. *Id.*

Plaintiffs' lawsuit raises an as-applied constitutional challenge to Section 6-158.9 of the New York State Election Law ("Section 6-158.9"). Dkt. No. 25, ¶ 1. Section 6-158.9 provides that candidates who seek to appear on the general election ballot by way of an independent nominating petition must file such petition no later than 23 weeks before the general election. *See* N.Y. Elec. Law § 6-158.9; Dkt. No. 25, ¶ 1, ¶ 20. Plaintiffs have filed suit pursuant to Section 1983 of Chapter 42 of the United States Code, claiming that the nominating petition deadline in Section 6-158.9 violates their rights under the First and Fourteenth Amendments of the United States Constitution. *Id.* at ¶ 2, ¶ 31. Plaintiffs seek declaratory and injunctive relief prohibiting the Erie County Board of Elections; Jeremy J. Zellner, Commissioner of the Erie County Board of Elections; and Ralph M. Mohr, Commissioner of the Erie County Board of Elections (collectively referred to as "defendants") from continuing to enforce the nominating petition deadline as set forth in Section 6-158.9.[2] *Id.*

### *Legislative History of New York's Petition Deadline for Independent Candidates*

There are two avenues by which a candidate for state or local office in New York may have their name appear on the ballot in the general election. *See* N.Y. Elec. Law § 6-134, § 6-138. There is the party-primary process, where potential candidates file a designating petition signed by a fixed number of registered voters belonging to their

---

[2] Plaintiffs filed this lawsuit on August 30, 2021, a couple of months prior to the November 2021 general election. Dkt. No. 1. At that time, plaintiffs also sought an injunction requiring defendants to place Byron Brown's name on the 2021 general election ballot, as candidate for Mayor of the City of Buffalo. (*Id.*) As explained in further detail herein, this portion of plaintiffs' request for relief is now moot.

political party. *Id.* at § 6-110, § 6-118, § 6-134; Dkt. No. 66-3, pgs. 18-19. If more than one party designating petition is filed by a potential candidate, a party nominee is selected via a primary election. *Id.* There is also a process for independent nomination, wherein a candidate may bypass the party primary process and instead seek direct access to the general election ballot by filing an independent nominating petition signed by a fixed number of registered voters. *See* N.Y. Elec. Law § 6-138; Dkt. No. 66-3, pg. 19. Candidates pursuing the independent nominating process may designate an "independent body" to make the nomination, provided the name of the independent body is not confusingly similar to that of an established political party. *Id.* at § 6-138.3. In New York, candidates for office are permitted to both compete in the party primary process as well as to seek one or more independent nominations. *Id.*; Dkt. No. 66-2, ¶¶ 1-2. This system provides candidates an opportunity for their name to appear on the general election ballot as a nominee on multiple ballot lines. Dkt. No. 66-2, ¶¶ 1-2. For example, in 2013, Byron Brown appeared on the general election ballot as a candidate for Mayor of the City of Buffalo as a nominee of the Democratic Party, the Working Families Party, the Independent Party, and the Conservative Party. *Id.* In 2017, he appeared on the general election ballot as a nominee of the Democratic Party, the Working Families Party, the Independence Party, and the Women's Equality Party. *Id.*

On January 10, 2019, the New York State Assembly (the "Assembly") proposed a bill containing amendments to the Election Law. Dkt. No. 66-2, ¶ 3; Dkt. 66-3, pgs. 9-13. These amendments consisted of a general overhaul of election dates and deadlines intended to bring state law into compliance with the federal Military and Overseas Voter Empowerment ("MOVE") Act and to facilitate, *inter alia*, the timely transmission of ballots

to military voters stationed overseas. *Id*. The proposed amendments moved the date for New York state and local primaries from September to the fourth Tuesday in June, to be held at the same time as the federal non-presidential primaries.[3] Dkt. No. 66-2, ¶ 4; Dkt. No. 66-3, pg. 16. The Assembly identified the following benefits with respect to the new, merged primary date: (1) to ensure that military personnel and New Yorkers living abroad would have an opportunity to vote; (2) to eliminate barriers to voter turn-out by reducing the number of primaries, in a given year, that New Yorkers would be asked to participate in; and (3) to incur a collective cost savings of approximately $25,000,000 for county boards of elections by reducing the number of primary days. Dkt. No. 66-2, ¶ 5; Dkt. No. 66-3, pg. 13.

The proposed amendments also included a change to the deadlines in Section 6-158.9, to provide that independent nominating petitions must be filed no later than 23 weeks before the general election.[4] Dkt. No. 66-3, pg. 11. Thus, the proposed amendment to Section 6-158.9 required candidates for state or local office in New York to file their independent nominating petitions in or around the end of May, at least 28 days before the new, merged primary date of the fourth Tuesday in June. *Id*.; Dkt. No. 25, ¶ 20.

---

[3] In 2012, New York was sued by the federal government because its election timelines did not provide for the transmitting of general election ballots 45 days before the election, as was required for elections for federal office. Dkt. No. 66-2, ¶ 4. An injunction resulting from this lawsuit meant that, beginning in 2012, and until the new amendments were introduced in 2019, New York held two different primaries: a federal non-presidential primary in June and a state and local primary in September. *Id*. The 2019 amendments merged the dates of these primaries to the fourth Tuesday in June, to provide a uniform date for non-presidential federal, state, and local primaries in New York. Dkt. No. 66-3, pg. 16.

[4] Prior to this time, Section 6-158.9 required independent nominating petitions to be filed 11 weeks prior to a general election. *See* N.Y. Elec. Law § 6-158 [former (9)]; N.Y. Elec. Laws 2019, Chap. 5; Dkt. No. 66-3, pg. 56.

The bill containing the 2019 amendments to the Election Law, including the change to Section 6-158.9 requiring the earlier submission of independent nominating petitions, passed the New York State Assembly by a vote of 120-42 on January 14, 2019, and passed the New York State Senate by a vote of 53-8 the next day. Dkt. No. 66-3, pg. 4; Dkt. No. 66-2, ¶ 6. On January 16, 2019, three members of the New York State Board of Elections, including the Co-Chair, Commissioner, and Co-Executive Director, authored a memorandum recommending that then-Governor of New York State Andrew Cuomo adopt the proposed amendments to the Election Law. Dkt. No. 66-3, pgs. 16-26. The members explained, *inter alia*, that the deadline for filing an independent nominating petition was changed in order to "fairly effectuate MOVE Act compliance and enact early voting." *Id*. at pg. 18.

The Board of Elections members further explained that the earlier petition deadline in Section 6-158.9 would provide "political stability" since it would "prevent sore loser candidacies in which an individual loses in a party primary, but then chooses to seek to run in the same election as an independent candidate." *Id*. at pg. 19. The members also explained that requiring independent nominating petitions to be filed before the party primary may, to some extent, discourage party candidates from using the independent nominating process only to seek an extra ballot position. *Id*. Thus, it was the members' belief that the new, earlier petition deadline would "encourage[] independent nominations to be about independent ballot access and not about party candidate sore losers getting on the ballot or [a] party candidate seeking an extra ballot position." *Id*. Moreover, New York is one of only five states which does not have a law prohibiting candidates who have

5

lost in a primary from appearing on the ballot for another party in the general election, commonly referred to as a "sore-loser law." Dkt. No. 66-2, ¶ 18.

The Board of Elections members also noted that an earlier petition deadline would promote a fairer electoral process, since allowing independent candidates to file their petitions at a significantly later date after the major parties' primaries could provide an unfair advantage to independent candidates. Dkt. No. 66-3, pg. 19. Further, the earlier deadline would allow voters to know all ballot candidates around the same time and would avoid giving major party candidates the advantage of campaigning for two months before the nomination of independent candidates. *Id.* The members further advised that the earlier deadline would serve the workflow needs of the Board of Elections and would promote the Board of Elections' interest in a timely and orderly construction of ballots by helping to ensure that any litigation over the validity of the petitions was settled early. *Id.* at 20. Last, the members remarked that the burdens on independent candidates to file their nominating petitions pursuant to the new deadline would be minimal, in light of: "(1) the proximity to the party candidate petition process; (2) [the] six-week period to collect independent nominating signatures from a larger population of voters than party candidates have available; and (3) the relatively low signature requirement for independent ballot access." *Id.* On January 24, 2019, then-Govenor Cuomo signed the bill into law. Dkt. No. 66-2, ¶ 11.

### *Brown's 2021 Mayoral Campaign*

In accordance with the 2019 amendments to the New York Election Law, a primary election for various state and local offices, including the office of Mayor of Buffalo, was held on June 22, 2021. Dkt. No. 66-2, ¶ 12. Also in accordance with the 2019

amendments, independent nominating petitions were due by May 25, 2021, pursuant to the revised Section 6-158.9. *Id.* at ¶ 14.

Byron Brown ran in the June 22, 2021 primary, seeking the Democratic Party nomination for the office of Mayor of the City of Buffalo.[5] *Id.* at ¶ 12; Dkt. No. 68-2, ¶ 6. Brown was defeated in the primary election by India B. Walton.[6] *Id.* On June 28, 2021, Brown announced his write-in candidacy for Mayor of the City of Buffalo. Dkt. No. 66-2, ¶ 20; Dkt. No. 68-2, ¶¶ 6-7. On August 17, 2021, almost two months after losing the primary election, Brown filed an independent nominating petition with the Erie County Board of Elections, seeking to appear on the general election ballot as an independent candidate for Mayor of the City of Buffalo. Dkt. No. 66-2, ¶ 13; Dkt. No. 68-2, ¶¶ 8-9. Plaintiffs, among others, signed Brown's independent nominating petition and wanted Brown's name to appear general election ballot. Dkt. No. 25, ¶¶ 7-11. However, because Brown's independent nominating petition was filed 84 days after the new petition deadline of May 25, 2021, it was deemed untimely pursuant to Section 6-158.9 and the Board of Elections rejected Brown's petition. Dkt. No. 66-2, ¶ 14; Dkt. No. 68-2, ¶ 11.

### *State and Federal Injunction Requests*

Plaintiffs filed the instant lawsuit on August 30, 2021. Dkt. No. 1. They also moved for a temporary restraining order prohibiting defendants from enforcing Section 6-158.9 and requiring defendants to place Brown's name on the general election ballot as an independent candidate for Mayor of the City of Buffalo. Dkt. No. 2. District Judge John L. Sinatra, Jr. held a hearing on September 3, 2021, at which time he (1) granted plaintiffs'

---

[5] As noted previously, Brown was the current Mayor of the City of Buffalo at the time of the June 22, 2021 primary and was the incumbent candidate.
[6] Walton was previously granted intervenor status in this lawsuit but has since been dismissed from the case. Dkt. Nos. 16, 58.

request for a temporary restraining order; (2) converted the order to a preliminary injunction at the request of the parties; and (3) enjoined defendants from refusing to place Brown's name on the 2021 general election ballot. Dkt. Nos. 26, 28. Defendants then appealed Judge Sinatra's granting of the preliminary injunction to the Second Circuit Court of Appeals. Dkt. No. 32.

Around this same time, Byron Brown filed a petition in New York State Supreme Court, Erie County, against the Erie County Board of Elections and others, seeking to validate his independent nominating petition and asserting that Section 6-158.9 was unconstitutional. *See Matter of Brown v. Erie County Bd. of Elections*, 197 A.D.3d 1503, 1504 (4th Dept. 2021) (discussing prior history). On September 7, 2021, New York State Supreme Court Judge Paul Wojtaszek granted Brown's petition and declared that Section 6-158.9 was unconstitutional in that the "deadline to file independent nominating petitions was excessively early." *Id*. Judge Wojtaszek further ordered that Brown's name was to appear on the general election ballot of November 2, 2021, as an independent candidate for Mayor of the City of Buffalo. *Id*. Defendants in the state lawsuit appealed Judge Wojtaszek's ruling to the New York State Appellate Division, Fourth Department. *Id*.

### *Rulings on Appeal by the Second Circuit and Fourth Department*

On September 16, 2021, the Second Circuit Court of Appeals issued a stay pending appeal of Judge Sinatra's preliminary injunction requiring Brown's name be placed on the general election ballot. Dkt. No. 45. The Second Circuit did not address the constitutionality of the independent nominating petition deadline imposed by Section 6-158.9 at the time it issued the stay of the preliminary injunction, nor did the Second Circuit otherwise discuss the merits of plaintiffs' lawsuit. *Id*.

Also on September 16, 2021, the Fourth Department issued a decision vacating the New York State Supreme Court's order requiring the Erie County Board of Elections to place Brown's name on the general election ballot. *Brown*, 197 A.D.3d at 1504. The Fourth Department concluded that Section 6-158.9, as applied to Brown's candidacy and petition, was constitutional, since a "reasonably diligent candidate" could be expected to meet the petition deadline and the deadline did not unfairly discriminate against independent candidates. *Id.* at 1506. The Fourth Department also noted that the constitutional challenge arose in the context of a local election which did not implicate national interests and that Brown was "far from the archetypal independent candidate" whose interests needed the protection sought in the lawsuit. *Id.* To that end, the Fourth Department noted that Brown "has been in elective office for the last 25 years, has served four terms as Mayor of the City of Buffalo, and first choose to participate in the Democratic primary in lieu of filing a timely independent nominating petition." *Id.* The Fourth Department reasoned that "states are constitutionally permitted to preclude candidates who lose one primary election from subsequently running on another ballot line." *Id.* Finally, the Fourth Department noted that several legitimate state interests were justified by the earlier deadline in Section 6-158.9, including ensuring the integrity and reliability of the electoral process; promoting political stability; and upholding the state's duty to meet federal deadlines with respect to the mailing of overseas and military ballots. *Id.* at 1507.

No appeal was filed from either the Second Circuit's order staying the preliminary injunction or the Fourth Department's dismissal of Brown's petition and lawsuit. Brown's

name did not appear on the ballot in the November 2, 2021 general election. Dkt. No. 66-2, ¶ 15.

### *Brown Wins Re-Election*

On November 2, 2021, following a successful campaign as a write-in candidate, Brown won the general election and was re-elected to the office of Mayor of the City of Buffalo. Dkt. No. 66-2, ¶ 16. He is currently serving his fifth term as Mayor of Buffalo. Dkt. No. 68-2, ¶2.

### *Continuation of the Present Lawsuit and Motion for Summary Judgment*

As a result of Brown's victory in the general election, defendants' appeal of the District Court's preliminary injunction requiring Brown's name to appear on the general election ballot was rendered moot. Dkt. No. 53. Thus, the Second Circuit vacated its order staying Judge Sinatra's preliminary injunction and remanded the case back to this Court. *Id.* Presently, the only remaining claim in this lawsuit is plaintiffs' challenge to the constitutionality of the independent nominating petition deadline in Section 6-158.9. Dkt. No. 25.

On April 20, 2022, the District Court referred the case to the undersigned for the handling of all pre-trial matters and to hear and report on dispositive motions. Dkt. Nos. 63, 69. This Court entered a Case Management Order which included deadlines for conducting discovery and filing dispositive motions. Dkt. No. 65. On December 1, 2022, defendants filed the instant motion for summary judgment. Dkt. No. 66. After the filing of responses and replies, the parties consented to have the undersigned render a final judgment on the motion. Dkt. Nos. 68, 70, 71. The Court heard oral argument on January 31, 2023, at the conclusion of which it requested additional briefing, including on the

issues of standing and mootness. Dkt. No. 72. Additional responses and replies were submitted by both parties. Dkt. Nos. 76-79.

*Winger Expert Report*

In support of their motion, plaintiffs have produced an expert report by Richard Winger, an advocate for ballot access for independent and minor party candidates. Dkt. No. 66-3, pgs. 39-40, 53-74. Winger opposed the portion of the 2019 amendments to the New York Election Law which included the earlier independent nominating petition deadline in Section 6-158.9. *Id.* Winger has a B.A. in political science; has conducted research on ballot access laws in all 50 states; and has testified as an expert in state and federal courts regarding ballot access issues. *Id.* at pgs. 54-55. Winger also publishes a monthly newsletter, *Ballot Access News*, which covers "the legal, legislative, and political developments of interest to third party and independent candidates." *Id.*

Winger submits that he has analyzed the independent nominating petition deadline in Section 6-158.9 and has concluded that: (1) it is discriminatory because it "weighs more heavily" on independent candidates as well as the voters who support them; (2) it imposes a severe burden on independent candidates and the voters who support them because it prevents candidacies that arise from genuine dissatisfaction with major party candidates and the positions of the major political parties; and (3) it imposes a severe burden on independent candidates and the voters who support them because "it requires them to gather signatures at a time when the populace is not politically engaged and the opportunities for public interaction are fewer." *Id.*

Winger provides a legislative history of New York's petition deadline for independent candidates and how that deadline has changed over the years, culminating

in the 2019 amendment to Section 6-158.9 that requires independent nominating petitions to be filed in late May. *Id.* at 55-57. Winger submits that because the current petition deadline is now 28 days before the state, local and non-presidential primary date in New York, it precludes new candidates from arising in response to "late-emerging issues, shifts in the positions supported by the major parties, or major party nominees whose views lie outside the political mainstream." *Id.* at pg. 61. Winger also opines that the early deadline makes it more difficult for independent candidates to gather signatures, since they are "forced to organize their petitioning efforts in the winter or very early spring, when the general election is quite remote and interest is low." *Id.* at 68.

Winger's expert report does not explain or discuss any specific burden the earlier petition deadline imposed on Brown, plaintiffs, or any other Brown supporters with respect to the 2021 mayoral election. Dkt. No. 66-3, pgs. 53-74. During Wingers' deposition, he was asked what information he used to analyze the scope of the burdens discussed in his expert report. Dkt. No. 66-3, pgs. 98-99. Winger replied that he relied on his knowledge of the history of the minor parties and independent candidacies. *Id.* Winger admitted that, in opining about the general burdens of the petition deadline in Section 6-158.9, he did not research the specific burdens imposed on either Brown supporters in 2021 or the plaintiffs in this case. *Id.*

### *Brown Affidavit*

In response to defendants' motion for summary judgment, plaintiffs submitted an affidavit by Byron Brown. Dkt. No. 68-2, pgs. 4-8. Therein, Brown states that he is the current Mayor of the City of the Buffalo and that he has served in this position since 2006. *Id.* at ¶ 2. Brown also served as the chair of the New York Democratic Party from May

2016 through January 2019. *Id.* at ¶ 4. Brown states that he sought re-election as the Democratic Party nominee for mayor in 2021, but was defeated in the primary. *Id.* at ¶ 6. Brown explains that after his defeat, he launched a write-in campaign and his supporters gathered signatures of eligible voters in an effort to nominate him as an independent candidate for mayor. *Id.* at ¶¶ 8-9. Brown states that his nominating petition was filed with the Erie County Board of Elections on August 17, 2021, but was rejected as untimely because it had not been filed by the May 25, 2021 deadline pursuant to Section 6-158.9. *Id.* at ¶¶ 9-11.

Brown contends that the petition deadline imposed a severe burden on him and his supporters. *Id.* at ¶ 12. Brown states that he was defeated by a "little known far-left candidate" in the primary, whose views were "far out of step with the mainstream." *Id.* at ¶ 14. Moreover, because the early petition deadline prevented any independent candidates from entering the mayoral race after the primary results were known, Brown and his supporters were going to be "left with no other choices on the general election ballot." *Id.* Brown states that it was then, at the urging of his supporters, that he pursued a write-in campaign. *Id.* Brown states that a write-in campaign is far more expensive and difficult than a campaign with ballot access. *Id.* at ¶¶ 16-21. Brown estimates that his 2021 write-in campaign cost him $1.5 million more than he would have spent had his name been on the general election ballot and that it took him a year to pay off the debt he incurred for these additional expenses. *Id.* Brown indicates that the write-in candidacy took approximately 13,000 more volunteer hours than would have been needed for a normal campaign with ballot access. *Id.* at ¶¶ 19-20. Brown avers that he was able to win in light of incumbency, name recognition, experience, and a memorable campaign slogan.

*Id.* at ¶ 21. He states that any other candidate would have been unlikely to accomplish this same feat. *Id.*[7]

## DISCUSSION

### *The Court's Jurisdiction*

During oral argument, the Court raised the issues of standing and mootness. Specifically, the Court questioned whether, in light of the fact that the 2021 general election has already taken place and plaintiffs were able to vote for Brown by writing-in his name on the ballot, plaintiffs have standing to bring the instant lawsuit. The Court also questioned whether the claims raised in the complaint are now moot, since Brown won the 2021 general election and is currently the Mayor of the City of Buffalo. The parties agreed, both during oral argument and in their supplemental submissions to the Court, that plaintiffs have standing to continue to pursue this lawsuit and that the issues remaining in the case are not moot.

Despite the fact that standing and mootness are not disputed by the litigants, this Court has an independent and continuing obligation to examine its own jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Fox v. Bd. of Trustees of the State Univ. of New York,* 42 F.3d

---

[7] The Court notes that Brown's affidavit is dated December 16, 2022, and therefore it was obtained well after the November 1, 2022 deadline for the close of fact discovery. Dkt. Nos. 65, 68-2. Plaintiffs argue that the affidavit should be considered timely because defendants "chose not to depose Brown even though he was identified as a witness in their initial disclosures." Dkt. No. 68, pgs. 8-9. Plaintiffs' argument is without merit. It is not defendants' burden to obtain evidence in opposition to their own summary judgment motion. Moreover, if plaintiffs believed that Brown had evidence or personal knowledge that either supported their position or created a genuine issue of material fact, it was their responsibility to depose him or obtain his affidavit during the discovery period. Thus, Brown's declaration is untimely. However, defendants do not object to the Court's consideration of the affidavit. Because there is no objection by defendants, and because the information contained in the affidavit does not change the outcome of the Court's decision in this case, the Court has considered Brown's affidavit despite its untimeliness.

135, 140 (2d Cir. 1994). Thus, before turning to the merits of the controversy, the Court will consider the threshold issues of standing and mootness.

*Standing*

In order to establish standing, "a plaintiff must show (1) [he or she] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000). The Supreme Court has further explained that standing need not be maintained throughout all stages of a lawsuit, and is instead assessed under the facts existing when the complaint is filed. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 69 (1987); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 (1992). *See Smith v. Sperling*, 354 U.S. 91, 93 n. 1 (1957) ("[J]urisdiction is tested by the facts as they existed when the action [was] brought" and "cannot be ousted by subsequent events.").

Courts have held that registered voters suffer a cognizable injury sufficient to confer standing when ballot access laws operate to deny them the opportunity to vote for their candidate of choice. For example, in *Graveline v. Benson*, plaintiff voters submitted evidence that Michigan's election laws governing ballot access for independent candidates had the effect of excluding their preferred candidate from the ballot, and therefore prevented them from voting for their candidate of choice. 992 F.3d 524 (6th Cir. 2021). The Sixth Circuit rejected the argument that since a preliminary injunction had been granted requiring their preferred candidate's name to appear on the ballot, plaintiffs

could not show an actual or imminent injury. *Id.* at 531-32. The Sixth Circuit instead concluded that plaintiffs had standing to maintain the lawsuit since, at the time the complaint was filed, they "plainly allege[d] a concrete injury in fact that they traced back to Michigan's ballot access laws for independent candidates." *Id. See also Anderson v. Celebrezze*, 460 U.S. 780 (1983) (permitting voters to challenge Ohio election law where early deadline for independent nominations restricted their preferred candidate's access to the ballot); *McLain v. Meier*, 851 F.2d 1045 (8th Cir. 1988) (plaintiff sufficiently alleged an injury as a voter where challenged ballot access laws would "restrict his ability to vote for the candidate of his choice or dilute the effect of his vote if his chosen candidate were not fairly presented to the voting public"); *Kelly v. McCulloch*, 405 Fed. Appx. 218, 219 (9th Cir. 2010) ("Candidate eligibility requirements implicate basic constitutional rights of voters as well as those of candidates.").

Courts in this Circuit had reached similar conclusions. In *Lerman v. Board of Elections*, the Second Circuit held that a plaintiff had standing to challenge a requirement that all witnesses to ballot access petitions be residents of the political subdivision where the election was to take place, since "[t]he injury-in-fact [plaintiff] alleges concerns the very process of engaging in political activity in support of [her preferred candidate's] candidacy, and that injury is sufficient to confer standing under Article III." 232 F.3d 135 (2d Cir. 2000). *See also Gottlieb v. Lamont*, 3:20-CV-00623, 2022 U.S. Dist. LEXIS 22063 (D. Conn. Feb. 8, 2022) (plaintiffs had standing to challenge the constitutionality of certain ballot access provisions in New York where "all three plaintiffs have alleged injuries from their inability to vote for their preferred candidate"); *Yang v. Kellner*, 458 F. Supp. 3d 199 (S.D.N.Y. 2020) (denying voters an opportunity to cast ballots for an individual who

represented their political views constituted an "actual, concrete and particularized injury.").

Here, at the time the complaint was filed, plaintiffs sufficiently alleged an injury-in-fact traceable to the petition deadline in Section 6-185.9. Specifically, plaintiffs alleged that they are registered voters living in the City of Buffalo and that they were prevented from having Brown, their candidate of choice, appear on the 2021 general election ballot for mayoral office.[8] Also, when the complaint was filed in August 2021, the alleged injury would have been redressed by having the petition deadline declared unconstitutional, such that Brown's independent nominating petition would have been accepted by the Erie County Board of Elections and Brown's name would have appeared on the general election ballot in November 2021. Thus, plaintiffs have standing to claim that Section 6-158.9 unjustly denied them and other voters the right to cast a ballot for Brown in the 2021 general election.

*Mootness*

The mootness doctrine is derived from Article III of the Constitution, which provides that federal courts may decide only live cases or controversies. *See Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998). Unlike standing, which a plaintiff does not have to maintain throughout the entire litigation, a case may be rendered moot at any stage of the litigation. *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006). *See also Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) (a live or actual controversy must exist throughout the case, not just at the time a complaint

---

[8] While it is true that plaintiffs were able to vote for Brown in the 2021 election through write-in votes, the Supreme Court has clarified that a write-in procedure is not an adequate substitute for having a candidate's name printed on the ballot. *See Anderson*, 460 U.S. at 780, n. 26.

is filed). "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Freedom Party of New York v. New York State Board of Elections*, 77 F.3d 660, 662 (2d Cir. 1996); *quoting New York City Employees' Retirement Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992).

The mootness doctrine is subject to an exception, however, if the underlying dispute is "capable of repetition, yet evading review." *See Irish Lesbian and Gay Org.*, 143 F.3d at 647. Challenges to election laws are one of the categories of cases which courts will often find fit into this exception to the mootness doctrine. Indeed, the Supreme Court has categorized voter challenges to the constitutionality of state candidate eligibility statues as issues "capable of repetition, yet evading review." *Ostrom v. O'Hare*, 160 F. Supp. 2d 486, 492 (E.D.N.Y. 2001); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (noting that the "capable of repetition, yet evading review" doctrine, in the context of election cases, is appropriate when there are "as applied" challenges as well as in the more typical case involving only facial attacks). As a result, many such cases are not deemed moot, and voters are permitted to challenge the relevant statutes, even where the election has already come and gone and the deadlines are no longer an issue. *Ostrom*, 160 F. Supp. 2d at 492. *See also Anderson*, 460 U.S. at 784 n. 3 (1983) (reviewing constitutionality of Ohio deadlines for registration of independent candidates over two years after the election). A challenge to an election law is capable of repetition, yet evading review, where the following two criteria are met: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

The instant scenario easily passes the first prong of the analysis. Plaintiffs' objection to the rejection of Brown's independent nominating petition as a result of the deadline in Section 6-158.9 was too short to be fully litigated prior to when the election occurred and the controversy over whether Brown's name was to appear on the general election ballot expired. Indeed, the complaint was filed on August 30, 2021, less than three months before the general election was scheduled to take place. *See Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) ("Challenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible by the outcome of the relevant election."); *Credico v. New York State Board of Election,* 10 CV 4555, 2013 U.S. Dist. LEXIS 109737 (E.D.N.Y. June 19, 2013) (finding that "[l]egal disputes involving election laws almost always take more time to resolve than the election cycle permits") (internal citations omitted).

The second prong of analysis requires more detailed consideration. *Lerman v. Board of Elections in the City of New York* involved a challenge to New York's election law requirement that witnesses to designating petitions must be residents of the political subdivision in which the election was to be held. 232 F.3d 135, 141 (2d Cir. 2000). Plaintiffs, consisting of the candidate effected by the requirements and individuals both inside and outside the relevant district who witnessed the petitions, argued that the law's residency requirement violated their First Amendment rights. *Id*. Prior to addressing the merits of the constitutional challenge, the Second Circuit dismissed defendants' argument that the case was moot since the primary election was over, having taken place without the candidate-in-question's name on the ballot. *Id*. The Second Circuit found that "there

[was] a reasonable expectation that the same complaining parties would be subject to that same action in the future" and therefore plaintiffs' claims fell within the exception to the mootness doctrine for issues capable of repetition, yet evading review. *Id.* at 141. Likewise, in *Van Wie v. Pataki*, the Second Circuit reaffirmed that, in order for the second prong of the exception to the mootness doctrine to apply in election cases, "there must be a reasonable expectation that the *same* complaining party would encounter the challenged action in the future." 267 F.3d 109, 114 (2d Cir. 2001). The *Van Wie* Court further cautioned, however, that "mere speculation that the parties will be involved in the same dispute over the same issues does not rise to the level of a reasonable expectation of demonstrated probability of reoccurrence." *Id.*

Here, the Court finds that the facts alleged in the complaint provide a reasonable expectation, as opposed to mere speculation, that plaintiffs would encounter the same challenge in future elections. Plaintiffs are registered voters who claim that the petition deadline in Section 6-158.9 prevented them having their preferred candidate appear on the 2021 general election ballot. There is a reasonable expectation that, at some point in the future, plaintiffs would again seek to vote for or support a candidate who either (1) loses in the primary election and then attempts to file an independent nominating petition in order to appear on the ballot; or (2) decides to seek an independent nomination to appear on the ballot after the primary election has already taken place. As long as the present petition deadline remains in effect, which requires independent nominating petitions to be filed 28 days before the state and local primary, these types of candidates will be precluded from appearing on the general election ballot. Thus, plaintiff voters will continue to be subject to Section 6-158.9 and there is reason to believe that the deadlines

contained therein will continue to have an effect on plaintiffs' choice of independent candidates appearing on the general election ballot. *See Moore v. Ogilvie*, 394 U.S. 814, 816 (1969) (finding the controversy not moot, even though the election was over, because the burden imposed by the challenged election law, which required a certain number of petition signatures from a certain number of counties in each state, "remains [in effect] and controls future elections."); *Credico*, 2013 U.S. Dist. LEXIS 109737 (because the New York State Election Law requiring certain candidates for office nominated by more than one independent body to list their name on the ballot only once would continue to be enforced in future elections, there was "every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints") (internal citations omitted); *Parish v. Kosinski*, 5-17-CV-344, 2017 U.S. Dist. LEXIS 232844 (N.D.N.Y. May 2, 2017) (Where a reasonable expectation existed that plaintiffs will "again find themselves faced with the prospect of wishing to engage in petition circulation activity in the Villages of North Syracuse and Liverpool, but [would be] chilled from doing so in view of the witness residence requirement," their challenge to the section of the election law governing party designating petitions was capable of repetition yet evading review.).

For these reasons, the Court finds that the controversy here is not moot because it is capable of repetition yet evading review.

## **Merits of the Dispute**

### *Applicable Legal Standards*

A party moving for summary judgment has the burden of establishing that no genuine issue of material fact is in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 256 (1986); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). Further, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund., Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Once the moving party discharges its burden of proof, the party opposing summary judgment has the burden of setting forth "specific facts showing that there is a genuine issue for trial," wherein "a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading." *Id.* Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48.

States retain the power to regulate their own elections. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). To that end, states are permitted to "enact reasonable regulations of the parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). The Supreme Court has recognized that unduly restrictive state election laws may "so impinge upon freedom of association as to run afoul of the First and Fourteenth Amendments." *Gottlieb v. Lamont*, 465 F. Supp. 3d 41, 47 (Dist. Conn. 2020); *accord Kusper v. Pontikes*, 414 U.S. 51, 57 (1973). However, "the mere fact that a State's system creates barriers tending to limit the field of candidates from which voters might choose does not itself compel close scrutiny." *Burdick*, 504 U.S. at 433. Thus, federal courts have eschewed applying a uniform strict scrutiny analysis in every constitutional challenge to a voting regulation or

candidate-qualification requirement. *Sam Party of N.Y. v. Kosinski*, 987 F.3d 267, 274 (2d Cir. 2021). Instead, the degree of scrutiny used to analyze the constitutionally of a state election regulation depends on the severity of the regulation's burden on the constitutional rights of candidates and their supporters. *Id.*; *Anderson*, 460 U.S. at 789. If the burden is severe, then strict scrutiny applies and the law "must be narrowly drawn to advance state interest of compelling importance." *Burdick*, 504 U.S. at 434, *Kosinski*, 987 F.3d at 274. A provision imposing "only reasonable, nondiscretionary restrictions," however, can be justified by a state's "important regulatory interests" and is subject to review that is "quite deferential" and requires "no elaborate, empirical verification." *Burdick*, 504 U.S. at 434; *Kosinski*, 987 F.3d 267. "State statutes, like federal ones, are entitled to the presumption of constitutionality." *Davies v. Warehouse Co. v. Bowles*, 321 U.S. 144, 153 (1944). Thus, plaintiffs here have the burden to prove that the state election law they challenge violates the well-recognized "presumption of constitutionality." *Id.*

For the following reasons, the Court finds that the material, undisputed facts in the record prove: (1) the petition deadline in Section 6-158.9 does not impose a severe burden and (2) any burden imposed by the deadline is justified by New York's important regulatory interests.

### *The petition deadline does not impose a severe burden.*

"[T]he hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 177 (6th Cir. 2020). The crux of this inquiry is whether a "reasonably diligent candidate could be expected to be able to meet the requirements to gain a place on the ballot." *Id.* at 178. Courts consider the

"burden imposed by the challenged regulation…not…in isolation, but within the context of the state's overall scheme of election regulations." *Lerman*, 232 F.3d at 145.

The petition deadline in Section 6-158.9 neither excludes, nor virtually excludes, independent candidates from having access to the general election ballot. Instead, candidates seeking an independent nomination for state or local office in 2021 could have obtained ballot access by collecting the requisite number of signatures starting on April 13, 2021, and by filing their nominating petition no later than May 25, 2021. *See* N.Y. Election Law §§ 6-138, 6-158.9; *Brown*, 197 A.D.3d 1505.

Contrary to plaintiffs' position here, the deadline for submitting an independent nominating petition does not impose a discriminatory burden that weighs more heavily on independent candidates. Major party candidates are required to declare their involvement in the party primary process, by filing their own designating petitions, approximately two months before independent candidates must declare their intent to run by filing an independent nominating petition. *See* N.Y. Election Law §§ 6-158.1, 8-100.1(a); *Brown*, 197 A.D.3d 1504. "Indeed, major party candidates have the additional burden of declaring their candidacies sixty days before independent and minor party candidates must file their signature petitions…and independent and major party candidates thus are in roughly comparable positions." *See Swanson v. Worley*, 490 F.3d 894 (11th Cir. 2007). Further, independent candidates in New York are given six weeks to collect the necessary signatures, while major party candidates are afforded only three weeks. *Brown*, 197 A.D.3d at 1505-06. Finally, independent candidates have the ability to collect signatures from a larger population of voters than major party candidates have available. *Id.* (explaining that an independent nominating petition for office of Mayor of Buffalo must

include 750 signatures from registered voters of any party affiliation, while a candidate for a party designation for that office must collect 600 signatures specifically from the enrolled voters of that party).

Plaintiffs contend that the May petition deadline is burdensome because it forces independent candidates to gather signatures at a time when the voting public is less engaged, and before the summer months when the opportunity for public interaction is higher. However, the independent nominating petition deadline occurs in close proximity to the major party candidate designation process, 28 days before the primary election, and in the spring. Thus, it is likely that the voting public would be relatively engaged and interested during the period of time that independent candidates are seeking petition signatures for state or local office in New York. The Court therefore finds, in light of New York's Election Law scheme as a whole, that a reasonably diligent candidate could be expected to meet Section 6-158.9's requirement for independent candidates to file timely a nominating petition. *See Brown*, 197 A.D.3d at 1505-07.[9]

Richard Winger, plaintiffs' expert, opines that a petition deadline of 28 days before the party primary imposes a severe burden because it prevents independent candidacies from arising in response to late-emerging issues, shifts in the positions of major parties, or dissatisfaction with major party nominees. Plaintiffs therefore argue that the petition deadline "effectively cuts off the opportunity for [independent] candidacies to develop at

---

[9] The Court recognizes that it is not bound by the Fourth Department's decision in *Brown* declaring that Section 6-158.9 is constitutional. However, the Court does find the Fourth's Department decision in *Brown* to be logical, well-supported by case law, and well-reasoned, and the Court has considered it as persuasive authority here. *See Industrial Consultants, Inc. v. H.S. Equities*, 646 F.2d 746, 749 (2d Cir. 1981) (recognizing that district courts are "not bound to adopt the [state] court's interpretation of federal constitutional principles, even as applied to [state] statutes," but that state court decisions on these issues are persuasive authority).

a time that pre-dates the period during which the reasons for their emergence are most likely to occur." Dkt. No. 79, pg. 3.  The Court disagrees. As explained above, independent candidates are not required to file their nominating petitions until two months after those individuals seeking major party nominations have filed their designating petitions. Thus, independent candidates have an opportunity to decide whether to enter a race after they learn who is competing in the party primaries. At that time, potential independent candidates would presumably have an understanding as to the field of likely major party nominees and their positions, even though the primary election would not have occurred, and could base their decision to run accordingly.[10]

Furthermore, independent candidates are not entitled to know for certain the identities of major party nominees or their positions before declaring their own intent to run for office. To that end, federal courts have upheld a number of ballot access laws which, like the petition deadline at issue here, required independent candidates to file their nominating petitions before the nominees of the major parties were known or selected. For example, in *Lawrence v. Blackwell*, the Sixth Circuit upheld an Ohio law which required an individual interested in becoming an independent congressional candidate in the general election to file both a statement of candidacy and a nominating petition by 4:00 p.m. on the day before the primary election. 430 F.3d 368 (6th Cir. 2005).

_____

[10] The Court also notes that failure to file a nominating petition in accordance with Section 6-158.9 does not bar an independent candidate from running for office. Indeed, an independent candidate or minor party candidate who decides to run for office after learning the results of a major party primary may still pursue a write-in campaign. Admittedly, a write-in campaign is more difficult and likely has less chance of success than a campaign with ballot access. However, it cannot be said that such a strategy is impossible. In fact, it is exactly what happened here, when Brown ran a successful write-in campaign in 2021 for Mayor of the City of Buffalo, after he and his supporters were dissatisfied with the results of the Democratic Party primary.

The Sixth Circuit rejected plaintiffs' argument that the early filing deadline imposed a severe burden on the constitutional rights of independent candidates since "independents often do not decide to run until after the deadline has passed." *Id*. The *Lawrence* Court recognized that "[t]hough an earlier deadline does impose more of a burden than a later deadline, the Supreme Court has held that little weight is given to 'the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status'." *Id.*; *quoting Storer v. Brown*, 415 U.S. 724, 736 (1974). The Sixth Circuit also held, and the Court finds especially applicable here, that "there is nothing in the case law which suggests that a state is required to give independent candidates the advantage of jumping into a race in response to late-breaking events which impact the political landscape when major parties do not have the same flexibility." *Lawrence*, 430 F.3d at 374.

Other federal courts have reached similar conclusions based on the same reasoning. *See e.g., Swanson*, 490 F.3d 894 (upholding constitutionality of Alabama election law which required independent candidates seeking ballot access to submit a petition by the first primary election date); *Wood v. Meadows*, 207 F.3d 708 (4th Cir. 2000) (rejecting independent candidate's argument that Virginia's petition deadline, which was the same day as the primary election, was unconstitutional because it limited the ability of independent candidates to react to events after the primary elections); *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64 (3d Cir. 1999) (upholding constitutionality of New Jersey law that required independent nominating petitions to be filed the same day as the primary and "reject[ing] the plaintiffs' claim that they are constitutionally entitled to file their nominating petitions after the major party candidates

are chosen so that they can recruit and nominate candidates who capitalize on disaffection with the major political parties' nominees.").[11] For these reasons, the Court finds that Winger's expert report fails to create a triable issue of fact as to the severity of the burden imposed by Section 6-158.9's petition deadline.

Plaintiffs fare no better with their argument that the petition deadline in Section 6-158.9 imposed a severe burden on Brown and his supporters, with respect to Brown's ability to appear on the 2021 general election ballot as an independent candidate for Mayor of the City of Buffalo. Brown's affidavit reflects that he did not attempt to run as an independent candidate until *after* losing in the Democratic Party primary election. In fact, Brown's independent nominating petition was not filed until August 17, 2021, approximately two months after his primary loss and almost three months after the petition deadline had expired. Thus, the record shows that Brown and his supporters never even tried to timely comply with the petition deadline. In fact, Brown admits as much when he states that he did not launch a write-in campaign or pursue an independent route to the ballot until after he lost in the primary and his supporters were dissatisfied with the party nominee. Indeed, Brown offers no reason as to why his timely compliance with the independent nominating petition deadline would have been unduly burdensome, had he

---

[11] Other courts have upheld petition deadlines for independent candidates that were even earlier than the deadline at issue here. In *McLain v. Meier*, the Eighth Circuit upheld a North Dakota statute which required third parties to submit nominating signatures at least fifty-five days before the primary election. 851 F. 2d 1045 (8th Cir. 1988). The *McLain* Court determined that the deadline advanced important state interests including, like here, the rescheduling of the state primary election from September to June. *Id.* at 1049. *See also Libertarian Party of Washington v. Munro*, 31 F.3d 759 (9th Cir. 1994) (upholding a Washington state election procedure that effectively required minor party candidates to announce their candidacies four to five weeks earlier than major party candidates and finding that collecting a relatively small number of signatures just four to five weeks before the selection of major-party candidates was not particularly difficult); *Stevenson v. State Bd. of Elections*, 638 F. Supp. 547 (N.D. Ill. 1986); *aff'd* 794 F.2d 1176 (7th Cir. 1986) (filing deadline of between 92 and 99 days prior to the date of the primary elections for independent candidates was not unconstitutional).

timely sought an independent nomination rather than electing only to run in the primary as a major party candidate.[12]

Brown's affidavit goes on to describe the various logistical and financial challenges he faced in running a write-in campaign. But these alleged burdens have nothing to do with Brown's ability to comply with the petition deadline in Section 6-158.9. Brown seems to claim that he was burdened because after losing in the primary, the deadlines in Section 6-158.9 prevented him from then appearing on the ballot as an independent candidate. But this scenario neither infringes on Brown's constitutional rights nor proves that Section 6-158.9 imposes an undue burden on independent candidates by requiring them to file nominating petitions before knowing the results of a party primary. In fact, the Supreme Court has made clear that states are permitted to enact "sore-loser" laws in order to expressly prohibit a candidate, like Brown, who loses in the primary, from then seeking to run in the same election as an independent or minor party candidate. *See Storer*, 415 U.S. at 735-36 (upholding the constitutionality of sore-loser laws); *Backus v. Spears*, 677 F.2d 397, 399-400 (4th Cir. 1982) ("South Carolina certainly has the power, as a permissible adjunct to promoting orderly primary elections, to forbid petition candidacies by persons who have been defeated in party primaries."). In sum, Brown's affidavit offers no evidentiary support for plaintiffs' position that the petition deadline in Section 6-158.9 imposed a discriminatory or undue burden on independent candidates

---

[12] As explained previously, New York Election Law would not have precluded Brown, in 2021, from both running in the party primary and, at the same time, obtaining the requisite number of signatures to timely file an independent nominating petition under Section 6-158.9. In fact, Brown had proceeded on such dual tracks in previous elections, where he appeared on the ballot both as the Democratic Party nominee for mayor and as the nominee of various independent groups. However, Brown chose not to pursue any independent nominations in 2021, prior to running in a major party primary.

and their supporters in general, or that it is imposed an undue burden on Brown and plaintiffs specifically.

Plaintiffs also rely heavily on *Anderson v. Celebrezze*, where the Supreme Court invalidated an Ohio statute that required independent candidates seeking a place on the November general election ballot to file a nominating petition 75 days before the primary election. 460 U.S. 780 (1983). However, the Court finds that *Anderson* is materially different from the facts presented here. First, *Anderson* involved a presidential election, and the Supreme Court specifically noted that "the State has a less important interest in regulating Presidential elections than statewide or local elections[.]" *Id.* at 795. This lawsuit arises in the context of a local mayoral election. *See Council of Alternative Political Parties*, 179 F.3d at 73 (noting that a court "cannot mechanically adopt the outcome" from *Anderson* because "the State's interest is appreciably greater" in regulating "state and local elections, rather than the national presidential election.").

Second, the *Anderson* Court found that Ohio's early filing deadline placed independent candidates at a distinct disadvantage by forcing them to file a nominating petition by March, or be excluded from the ballot, while major party candidates were not chosen until party conventions at the end of summer, and could appear on the ballot even if they had not filed a designating petition or participated in a primary. *Id.* at 790-94. Thus, major party candidates had many more months to obtain access to the ballot, than was afforded to independent candidates. Differently here, the New York Election Law requires all candidates, both major party and independent, to gather signatures and file nominating or designating petitions prior to the primary. In addition, independent candidates in New York do not have to file their nominating petitions until approximately two months after the

major party candidates file their designations. Thus, the regulation at issue here does not burden independent candidates in the same manner that the Ohio statute burdened independent candidates in *Anderson*.

Plaintiffs in this case essentially seek a petition deadline substantially later than the date of primary. They seek a deadline that would allow candidates such as Brown enough time to both decide to run as an independent and gather enough signatures for a nominating petition, after either having lost an election bid for a major party nomination or after having the benefit of knowing the results of the major primary primaries. Accordingly, "what [plaintiffs] are seeking cannot be termed equal treatment [but instead] they are asserting a constitutional right to preferential treatment." *See Council of Alternative Political Parties*, 179 F.3d at 74. The denial of such preferential treatment does not impose an undue burden on plaintiffs' constitutional rights.[13]

For all of these reasons, the Court finds that plaintiffs have failed to raise a genuine issue of material fact as to whether the independent nominating petition deadline in Section 6-158.9 imposes a severe burden on their constitutional rights. Because the Court

---

[13] Plaintiffs also cite cases where courts struck down early filing deadlines that fell more than a single day before a major parties' primary. The Court finds these cases to be inapposite. First, the deadlines in most of the cases cited by plaintiffs were notably earlier than the deadline here, which is only 28 days before the primary. *See e.g., Nader v. Brewer*, 531 F. 3d 1028, 1039 (9th Cir. 2008) (deadline 90 days before primary, in context of national election); *Cromer v. South Carolina*, 917 F.2d 819, 822 (4th Cir. 1990) (deadline 70 days before primary); *New Alliance Party of Ala. v. Hand*, 933 F.2d 1568 (11th Cir. 1991) (deadline 60 days before primary); *Council of Alternative Political Parties*, 121 F.3d 876 (3d Cir. 1997) (deadline 54 days before primary). Other cases cited by plaintiffs are distinguishable in that they involved candidates attempting to run for president in a national election. *See Populist Party v. Herscher*, 746 F.2d 656, 661 (10th Cir. 1984); *Nader 2000 Primary Cmte., Inc. v. Hazeltine*, 110 F. Supp. 2d 1201, 1208 (D.S.D. 2000). Also, in contrast to these cases, where courts found a severe burden based on the specific facts presented, plaintiffs here have failed to raise any triable issue of fact showing that the deadline in Section 6-158.9, considered in totality with New York's Election Law scheme, placed an undue burden on plaintiffs themselves or on independent candidates and their supporters in general.

finds that any burdens imposed by Section 6-158.9 are reasonable and non-discriminatory, strict scrutiny does not apply here.

### *The petition deadline is justified by important state interests*.

The lesser scrutiny to be applied here is not "pure rational basis review." *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 108 (2d Cir. 2008). Rather, "the court must actually 'weigh' the burdens imposed on the plaintiff[s] against 'the precise interests put forward by the State,' and the court must take 'into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* at 108-09; *quoting Burdick*, 504 U.S. at 434. In conducting this analysis, "a state's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Gottlieb v. Lamont*, 22-449, 2023 U.S. App. LEXIS 8542 (2d Cir. 2023). Otherwise, courts would "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 598 (2005).

Here, defendants assert that the petition deadline in Section 6-158.9 effectuates the following important state regulatory interests: (1) ensuring the integrity and reliability of the electoral process; (2) promoting political stability at the expense of factionalism; and (3) upholding the state's administrative duty to meet federal deadlines for the mailing of overseas and military ballots. Under the deferential standard of review just explained, these proffered interests are sufficient to justify the filing deadline at issue here. *Kosinski*, 987 F.3d at 277-78. Moreover, the Court finds no evidence in the record upon which a reasonable jury could conclude that the state's interest in promulgating the petition

deadline does not outweigh any reasonable and nondiscriminatory burdens imposed on plaintiffs.[14]

The record before the Court reflects that the independent nominating petition deadline in Section 6-158.9 was enacted as part of a general overhaul of election dates and deadlines, all designed to, *inter alia*, ensure state law compliance with the federal MOVE Act and to facilitate the timely transmission of ballots to military voters stationed overseas. These changes also facilitated the merging of New York state, local, and non-presidential primaries to a single date in June. During the legislative process, members of the Erie County Board of Elections specifically represented that the deadline for filing an independent nominating petition was changed in order to "fairly effectuate MOVE Act compliance and enact early voting." The Court finds these reasons consistent with a state's right to "enact reasonable regulations of parties, elections and ballots" and to reduce campaign-related disorder. *Timmons,* 520 U.S. at 358. *See also Council of Alternative Political Parties*, 179 F.3d at 79 (states have a legitimate interest in maintaining a stable and efficient election process).

During discovery in this case, a representative from the Erie County Board of Elections testified that, in the course of administering an election, the Board has "38 different items that go to 851 election districts that all need to be sorted and put together."

---

[14] Plaintiffs argue that the state's justifications for the deadline are "disputed as a matter of fact." Plaintiffs point to their expert declaration wherein Winger argues as to the validity of the state interests cited by defendants and the extent to which the petition deadline actually effectuates those interests. (Dkt. No. 66-3, ¶¶ 55-78) In light of the evidence put forth by defendants as to the legislative history and intent of the 2019 amendments to the New York Election Law, as well as the case law discussed herein acknowledging the validity of the state interests cited by defendants, the Court finds that Winger's declaration fails to raise a factual dispute. Stated another way, plaintiffs' contention that defendants' reasons for the amendment to the petition deadline are not good ones does not create an issue of material fact sufficient to defeat summary judgment.

Dkt. No. 66-3, pg. 160. Moreover, with respect to the 2021 general election, New York Law required that ballots be mailed to overseas voters by September 17, 2021. *See* N.Y. Elec. Law § 10-108(1), § 11-204(4). The Board representative testified that if an independent nominating petition was accepted on August 17, 2021, it "would just create pure chaos at the Board" and would "make it almost impossible to comply with federal military absentee laws." *Id*. Thus, the Court finds that the filing deadline in Section 6-158.9 supported the important state interest of allowing election officials to timely process independent petitions in light of the new, merged June primary date and MOVE Act requirements governing the transmission of overseas ballots. *See Lawrence*, 430 F.3d at 375 (finding that the early filing deadline for independent petitions meets Ohio's "administrative interest of being able to process independent candidates' petitions and verify signatures in the midst of completing a host of other tasks necessary to conduct a fair election."). The earlier deadline also promotes the state's interest in a timely and orderly construction of ballots by helping ensure that any litigation related to the petitions is settled early.

In addition, by requiring independent candidates to file their nominating petitions before the results of the primary are available, the petition deadline at issue here serves the state's important interest in both preventing sore-loser candidacies and potentially discouraging party candidates from using the independent nominating process to seek an extra ballot position. Indeed, it is well-established that states have an important interest in ensuring "the stability of their political systems" and avoiding "party splintering and excessive factionalism." *Timmons*, 520 U.S. at 366-67. *See also Council of Alternative Political Parties*, 179 F.3d at 78 (New Jersey's interest in preventing "sore-loser"

candidacies rises to the level of a legitimate and important state interest); *Swanson*, 490 F.3d at 910 ("By placing reasonable restrictions on ballot access for independent and minor party candidates, Alabama's election scheme discourages party-splintering and factionalism that could destabilize the political system.").

Moreover, defendants have demonstrated that moving the petition deadline from August to May served the legitimate state interest of promoting a fairer electoral process. First, the earlier deadline for independent nominating petitions ensures that voters will have knowledge of all ballot candidates around the same time, and also avoids giving major party candidates the advantage of campaigning for two additional months before independent candidates are nominated. *Council of Alternative Political Parties*, 179 F.3d at 78 ("The State also has a legitimate interest in voter education."). Also, allowing independent candidates to continue to file their petitions in August, when the major party candidates are now selected in June, could provide an unfair advantage to independent candidates. *Id.* ("Allowing minor parties to file on a later date – after the major party's primary – would give them a significant advantage, and it is entirely reasonable for New Jersey to regard any such advantage as unfair.").

The record here demonstrates that New York has important state regulatory interests which are sufficient to justify the reasonable and nondiscriminatory burdens imposed by the filing deadline. Accordingly, after considering all of the material and undisputed facts in the record, the Court finds, as a matter of law, that the independent nominating petition deadline in Section 6-158.9 of the New York State Election Law does not violate plaintiffs' constitutional rights, and that defendants are entitled to judgment as a matter of law.

**<u>CONCLUSION</u>**

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiffs' complaint is dismissed. (Dkt. No. 66) The Clerk of the Court shall take all necessary steps to close the case.


**SO ORDERED.**


Dated:        July 10, 2023
              Buffalo, New York


MICHAEL J. ROEMER
United States Magistrate Judge